UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA,  CASE NO.  00-6121-CR-FERGUSON
Plaintiff,
vs.

KENELY TESTAMARK,
Defendant.
_____/

### DEFENDANT'S MOTION FOR DOWNWARD DEPARTURE

COMES NOW the defendant, Kenely Testamark, by and through the undersigned attorney, and moves this Court for a downward departure from the sentencing guidelines, and in support thereof states:

1. District courts can depart downward from the applicable Guidelines range when they find a" 'mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the Guidelines.' " U.S.S.G s. 5K2.0, p.s. (quoting 18 U.S.C. s.3553(b)). Each Guideline carves out a heartland- set of typical cases embodying the conduct that the Guideline describes. See Koon v. United States, 116 S. Ct. 2035, 2044(1996). The Guidelines do not adequately take atypical cases into consideration, however. See id. " 'When a court finds an atypical case, one to which a particular Guideline linguistically applies but [in which] conduct significantly differs from the norm, the court may consider whether a departure is warranted.' "Id. (quoting U.S.S.G. ch. 1, pt. A, intro. commentary 4(b)). With the exception of certain specified factors that can never be bases for departure, the Sentencing Commission has not limited the kinds of factors that may make a case atypical and provide potential grounds for departure. See id, 116 S. Ct. at 2044-45.

2. According to Koon, a sentencing court's approach to a departure question must begin with an assessment of whether the Sentencing Commission has addressed the propriety of departing based on a particular factor. If the factor is a "forbidden factor", *see, e.g.,* s. 5H1.10, the court may not use



it as a basis for departure. If the factor is an "encouraged factor", *see, e.g.*, ss. 5K2.2-5K2.15, "the court is authorized to depart if the applicable Guideline does not already take it into account" Id, at 2045. If the factor is a "discouraged factor", *see, e.g.*, ss. 5H1.1-5H1.6, or an encouraged factor that has been taken into account by the applicable guideline, "the court should depart only if the factor is present to an exceptional degree or in some other way makes the case different from the ordinary case where the factor is present." Id, at 2045.

    3. The defendant, Kenely Testamark, requests, a downward departure pursuant to U.S.S.G. s. 5K2.13, Diminished Capacity.

    U.S.S.G. s. 5K2.13 states as follows:

> A sentence below the applicable guideline range may be warranted if the defendant committed the offense while suffering from a significantly reduced mental capacity. However, the court may not depart below the applicable guideline range if (1) the significantly reduced mental capacity was caused by the use of drugs or other intoxicants; (2) the facts and circumstances of the defendant's indicate a need to protect the public because the offense involved actual violence or a serious threat of violence; or (3) the defendant's criminal history indicates a need to incarcerate the defendant to protect the public. If a departure is warranted, the extent of the departure should reflect the extent to which the reduced mental capacity contributed to the commission of the offense.

"Significantly reduced mental capacity" includes both cognitive impairments and volitional impairments. United States v. McBroom, 124 F.3d 533 (3d Cir. 1997). U.S.S.G. s. 5K2.13, comment. (n.1) specifically includes both types of impairments in the definition of "significantly reduced mental capacity.

    On June 26th, 2000, the defendant was evaluated by Dr. Eric A. Imhoff, PsyD. Dr. Imhoff's diagnostic impressions, AXIS I, are:

    a. Major Depressive Disorder, Single Episode, Severe without Psychotic features, Chronic.

    b. Rule out pedophilia.

    c. Rule out alcohol abuse.

Dr. Imhoff's findings are summarized as follows:

> Mr. Testamark is currently experiencing **significant depression** which he describes as chronic in nature. Although he denied current suicidal ideation in the interview, his responding to psychological test instruments suggests an ongoing suicidal ideation that requires continuous monitoring. Mr. Testamark is a socially isolated and guarded individual who appeared to have significant needs for attention and social interaction but lacks the skills necessary to engage others. He is likely to be seen by others as odd and peculiar in thought and action. he suffers from a negative self-perception and appears to lack confidence, which interferes with his ability to form and maintain healthy and ongoing relationships with others. Rather than risk rejection from others, Mr. Testamark retreats into isolation and interactions with the outside world are limited to mainly television and the Internet...... Mr Testamark appears to be an appropriate candidate for outpatient therapy at this time. Current information suggests his offenses are limited to the viewing and storing of pornographic images obtained over the Internet. Further, **Mr. Testamark is suffering from chronic depression and resultant low self-esteem and social isolation that may have contributed to his decision to become involved in the viewing of pornography via the Internet**. Mr. Tetamark appears to be experiencing significant distress at this time and he is motivated to participate in treatment. Treatment efforts to address his depressive symptomotology and provide him skills to manage the factors contributing to his decision to view child pornography are recommended. (emphasis added).

Dr. Imhoff observed that defendant's mood was depressed and his affect was blunted. The defendant reported symptoms of depression including hopelessness, occasional suicidal ideation, anhedonia, sleep disturbance, lack of energy. It is Dr. Imhoff's opinion that defendant's insight and judgment appear impaired.

In his self-report to Dr. Imhoff, the defendant acknowledged that it was illegal to posses pornographic pictures but that "it did not seem to matter if it was right or wrong....something snapped and it felt like the right thing to do". As noted above, the inability to control behavior that the person knows is wrongful is the type of volitional impairment that is included in the definition of "significantly reduced mental capacity".

Subsequent to the psychological evaluation done by Dr. Imhoff, the defendant attended sex-

offender specific group treatment at the Center for Offender Rehabilitation at the Oakbrook Counseling Center and is presently seeing a psychiatrist, Ernest Cohen, M.D., on an individual basis. The defendant has thus demonstrated motivation by attempting to make the changes necessary to conform his behavior within legal bounds as well as pursuing a higher level of mental health.

The defendant qualifies for downward departure under U.S.S.G. s. 5K2.13 because he suffers from a major depressive disorder which contributed to the commission of the offense. In reading Dr. Imhoff's evaluation, it is clear that there was a direct causal relationship between his major depressive disorder and his offense. The defendant's mental and emotional condition constituted an integral part of the criminal conduct which detracted from the intent to violate the law. The defendant's mother confirmed (in the P.S.I. Report) that the defendant has suffered from depression for quite some time, but that she only observed this condition since his release from the military (in May of 1992). Furthermore, the defendant is eligible for a downward departure because (1) the significantly reduced mental capacity was not caused by the voluntary use of drugs or other intoxicants (Dr. Imhoff, in his test results and interpretation section states that defendant's response pattern on the MSI-II did not indicate a history of substance abuse as assessed by the Substance Abuse Index); (2) the facts and circumstances of the defendant's offense do not indicate a need to protect the public because the offense did not involve actual violence or a serious threat of violence; and (3) the defendant' criminal history does not indicate a need to incarcerate the defendant to protect the public (the defendant has zero criminal history points and a criminal history category of I).

4. The defendant, Kenely Testamark, requests a downward departure pursuant to U.S.S.G. s. 5K2.20, Aberrant Behavior.

U.S.S.G. s. 5K2.20 reads as follows:

> A sentence below the applicable guideline range may be warranted in an extraordinary case if the defendant's criminal conduct constituted aberrant behavior. However, the court may not depart below the guideline range on this basis if (1)

>the offense involved serious bodily injury or death; (2) the
>defendant discharged a firearm or otherwise used a firearm or
>a dangerous weapon; (3) the instant offense of conviction is
>a serious drug trafficking offense; (4) the defendant has more
>than one criminal history point, as determined under Chapter
>Four (Criminal History and Criminal Livelihood); or (5) the
>defendant has a prior federal, or state, felony conviction
>regardless of whether the conviction is countable under
>Chapter Four.

U.S.S.G. s. 5K2.20., comment. (n.1) defines "Aberrant behavior" as a single criminal transaction that (A) was committed without significant planning; (B) was of limited duration; and (C) represents a marked deviation by the defendant from an otherwise law-abiding life.

The defendant submitted to U.S. Probation Officer Georgann Stanley the following signed statement regarding his participation in the instant offense:

>When I first got my computer, I used the Internet for my school
>work. On my off time, I would go on other sites, mostly adult
>and some cartoons. On some of the adult sites, other sites
>would pop up which had references to child porn sites. I
>clicked on those sites which invited me to view samples. I
>looked at the samples and downloaded in excess of eighty five
>images. I downloaded images from different sites. I
>occasionally looked at the downloaded image, but not to the
>point where it made me sexually aroused. the images were
>discovered by an employee of a computer store when I took it
>in for repair.

This statement makes clear that the defendant was responding to prompting on his computer screen in committing his offense and that he was not engaged in planning, "significant" or otherwise. The defendant reported to Dr. Imhoff a limited social life, that he feels generally uncomfortable around people, and that he spends the majority of his time by himself watching television and on the Internet. Dr. Imhoff reports the following:

>Mr. Testamark produced significant elevations on the clinical
>scales of the MMPI-2 suggesting marginal social adjustment
>and feelings of alienation from others. individuals who
>respond in a manner similar to Mr. Testamark typically
>demonstrate depression, anxiety, tension, irritability, and
>generalized mental distress. They report difficulties with
>concentration and report difficulty making decisions. He may

> become agitated and restless at times and may **think and act in impulsive manner, making decisions and acting in erratic ways**.
> Emotionally, individuals who respond in a manner similar to Mr. Testamark tend to be highly variable, but their affect generally revolves around feelings of guilt, inferiority, and hopelessness. Suicide attempts are relatively common. Emotionally distant from others, these persons are peculiar in thought and action (particularly in sexual areas), show subtle communication problems, and are seen as unpredictable. ...**Crimes committed by these individuals are often poorly planned and carried out in a manner that seems to ensure that they will get caught, and appears to be self-defeating** (emphasis added).

Thus, the defendant meets the requirement that the offense was committed without significant planning.

Additionally, it is clear that the Commission intends that the phrases "single criminal occurrence" and "single criminal transaction" will be somewhat broader than "single act". The defendant's criminal transaction consists of downloading pornographic images over a period of two weeks, qualifying the offense as being of limited duration.

Finally, defendant's offense represents a marked deviation from an otherwise law-abiding life. As noted previously, the defendant has zero criminal history points and a criminal history category of I. Dr. Imhoff reports that defendant's score in the Antisocial Behavior Scale does not suggest a pattern of delinquent or antisocial behavior. The defendant does not appear to have a lifestyle pattern of violent behavior as noted on the Domestic Violence Scale, and his response pattern on the MSI-II did not indicate a history of substance abuse as assessed by the Substance Abuse Index.

The defendant is further eligible for downward departure under U.S.S.G. s. 5K2.20 because (1) the offense did not involve serious bodily injury or death; (2) the defendant did not discharge a firearm and did not otherwise use a firearm or a dangerous weapon; (3) the instant offense of conviction is not a serious drug trafficking offense; (4) the defendant has zero criminal

history points; and (5) the defendant does not have a prior federal, or state, felony conviction not countable under Chapter Four.

U.S.S.G. s. 5K2.20., comment. (n.2), lists a number of (non-exclusive?) factors which may have some relevance in evaluating the appropriateness of a departure based on aberrant behavior. Among those, the defendant's mental and emotional conditions, and the motivation for committing the offense (loneliness and boredom), are factors which were addressed under paragraph #3 of this motion and which weigh in favorably on the side of downward departure. Additionally, while defendant's employment record is spotty, and financially unrewarding, it is worth to note that the defendant has pursued since spring of 1989, and has recently obtained, a college degree, a B.S. in Criminal Justice. As for defendant's efforts to mitigate the effects of the offense, the offense of Possession of Child Pornography does not have **direct** effects on the victims. The defendant, however, has accepted responsibility, pled guilty to the charge in a timely manner, has agreed to forfeit the computer involved and has undertaken steps to conform his future behavior within legal bounds.

5. The defendant, Kenely Testamark, requests a downward departure pursuant to U.S.S.G. s. 5K2.0, grounds for departure.

As noted above, the general rule is that if the factor urged as a basis for departure is "discouraged factor", or an encouraged factor that has been taken into account by the applicable guideline, the court should depart only if the factor is present to an exceptional degree or in some other way makes the case different from the ordinary case where the factor is present. The commentary to U.S.S.G. s. 5K2.0 makes a limited allowance for a totality of circumstances departure: "The Commission does not foreclose the possibility of an extraordinary case that, because of a combination of such characteristics or circumstances, differs significantly from the 'heartland' cases covered by the guidelines in a way that is important to the statutory purposes of

sentencing, even though none of the characteristics or circumstances individually distinguish the case." The defendant is urging the Court to find that this is the extremely rare case that the Commission envisioned. The combination of characteristics and circumstances present in this case are as follows:

    a. U.S.S.G. s. 5H1.2.- Education and Vocational Skills.

The defendant has recently obtained a B.S. degree in Criminal Justice. However, because of his conviction for this offense, he cannot undertake a career in the field of his choice, law-enforcement. The devastation brought on by the knowledge that his efforts to obtain the degree have been rendered meaningless constitutes substantial punishment in addition to any court-imposed sentence. Education, ordinarily a "discouraged" factor, thus makes this case different from the ordinary case where the factor is present. Alone, or in combination with the other factors listed below, it justifies a downward departure in this case.

    b. U.S.S.G. s.5H1.3.- Mental or Emotional Conditions.

See the discussion in paragraph #3 of this motion.

    c. U.S.S.G. s. 5H1.11.- Military Service.

The defendant enlisted in the United States Army in May of 1989 where he was decorated with the national defense service medal, army service ribbon, overseas service ribbon, marksman badge rifle, southwest Asia service medal with three bronze service stars, and the Kuwait liberation medal. The defendant obtained the rank of Specialist E-4 and was a chemical operations specialist who participated in Operation Desert Storm. He was given an honorable discharge in May, 1992.

    d. U.S.S.G. s. 5H1.12.- Lack of Guidance as a Youth.

The defendant's parents were divorced when he was five years old, and he remained in the care of his mother. The defendant's mother confirms that the defendant suffered from the lack of a

father figure as he did not have a close relationship with either his biological father or his stepfather. Neither man took the time to provide the defendant with guidance.

The convergence of the above-listed factors, although inadequate to warrant departure when taken in isolation, are in combination sufficient to remove this case from the heartland.

WHEREFORE, the defendant respectfully requests this Honorable Court to depart downward from the sentencing guidelines and sentence him to probation.

_____
Maury Halperin, Esq.
Attorney for the Defendant
Florida Bar No.: 539252
1326 S.E. 3rd Ave.
Fort Lauderdale, FL 33316
954.763.7474; Fax 954.767.0213

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was furnished by hand to Laurence Bardfeld, Assistant U.S. Attorney, 500 East Broward Boulevard, Fort Lauderdale, FL 33394, and to Georgann Stanley, U.S. Probation Officer, 299 E. Broward Boulevard, Room 409, Fort Lauderdale, Florida, this 10th day of October, 2000.

_____
Maury Halperin, Esq.

## SPECIALIZED TREATMENT AND ASSESSMENT RESOURCES, P.A.
62 INDIAN TRACE #223, WESTON, FL 33326
PHONE: (954) 646-6141   FAX: (954) 385-1520
SERVING PALM BEACH/ FT. LAUDERDALE/ MIAMI

ERIC A. IMHOF, PSYD
PRESIDENT/CLINICAL DIRECTOR
FLORIDA LICENSED PSYCHOLOGIST
VIRGINIA LICENSED CLINICAL PSYCHOLOGIST
VIRGINIA BOARD OF PSYCHOLOGY CERTIFIED SEX OFFENDER TREATMENT PROVIDER

August 11, 2000

Mr. Wayne D. Corry, Esq.
Suite 200N, Justice Building
524 South Andrews Ave.
Fort Lauderdale, FL 33301

Dear Mr. Corry:

Enclosed, please find the psychological evaluation of Kenely Testamark as requested by Mr. Halperin.

Thank you for this referral and the opportunity to work with Mr. Testamark.

If you have any questions, or if I may be of assistance, please contact me at the above address and telephone numbers. Please note that I have moved the location of my practice and any pervious address or telephone numbers are invalid.

Sincerely,

*[signature]*
Eric A. Imhof, Psy.D.

resultant low self-esteem and social isolation that may have contributed to his decision to become involved in the viewing of pornography via the Internet. Mr. Testamark appears to be experiencing significant distress at this time and he is motivated to participate in treatment. Treatment efforts to address his depressive symptomotology and provide him skills to manage the factors contributing to his decision to view child pornography are recommended.

## REASON FOR REFERRAL:

Kenely Testamark was referred for a psychological evaluation by Wayne Corry, Esquire to determine if Mr. Testamark is amenable to treatment and to provide treatment recommendations.

## SOURCES OF INFORMATION:

The following report is based on information obtained from the following:

Records provided by Wayne D. Corry, Esquire: 1) Indictment in United States District Court Southern District of Florida (5/11/00, 2 pp.); 2) Notice of Appearance in the United States District Court Southern District of Florida (no date, 1 p.); 3) Government's Response to Standing Discovery Order in the United States District Court Southern District of Florida (5/31/00, 5 pp.); 4) Case Synopsis (no date, 2 pp.); 5) Fort Lauderdale Police Department Offense Incident Report (11/16/99, 2 pp.); 6) Fort Lauderdale Police Department Offense Property Report (11/16/99, p.); 7) Fort Lauderdale Police Department Offense Person(s) Report (11/17/99, 2 pp.); 8) Fort Lauderdale Police Department Offense Person(s) Report (11/17/99, 2 pp.); 9) Fort Lauderdale Police Department Supplemental Page 1 & 2 (11/17/99, 2 pp.); 10) Fort Lauderdale Police Department Supplemental Page 1 & 2 (11/17/99, 2 pp.); 11) Copy of Gateway work order [copy illegible in parts] (11/16/99, 2 pp.); 12) Consent to Search (11/17/99, 1 p.); 13) Statement of Jessica Baillargeon (11/17/99, 8 pp.); 14) Statement of Peter Fagan (11/17/99, 7 pp.); 15) Evidence Property Form (11/17/99, 1 p.); 16) Evidence Property Form (11/17/99, 1 p.); 17) Fort Lauderdale Police Supplemental Page 1 (11/31/99, 1 pp.); 18) Fort Lauderdale Police Supplemental Page 1 (1/18/99, 1 pp.); 19) Evidence/Property Form (11/17/99, 1 p.); 20) Fort Lauderdale Police Supplemental Page 1 (1/21/99, 1 pp.); 21) Strategic Investigative Division Arrest/Incident Report (1/21/00, 2 pp.); 22) Property Receipt (1/20/00, 1 p.); 23) Strategic Investigative Division Arrest/Incident Report (1/21/00, 2 pp.); 24) Encase Report (1/20/00, 13 pp.)

Interviews: 1) Interview with Kenely E. Testamark (2 hrs. 6/26/00).

## CONFIDENTIALITY STATEMENT:

Mr. Testamark was informed of the nature and purpose of the evaluation and the limited confidentiality of the report. He was informed that he had the right to refuse any questions he did not wish to answer. He was informed that his decision to participate or not participate in the examination would not guarantee any particular outcome regarding the evaluation. He acknowledged an understanding of the information presented by the examiner, and was able to summarize the relevant points of this information back to the examiner. Mr. Testamark

indicated his willingness to proceed in light of the limits of confidentiality and signed the consent form.

## RELEVENT BACKGROUND INFORMATION:

<u>Sexual Offense History</u>: Mr. Testamark was arrested for possession of 86 child pornography images stored on the hard drive of his computer.

<u>Mr. Testamark's Self-Report</u>: Mr. Testamark reported that he purchased his computer in May 1999 and began exploring adult pornography sites on the Internet. He stated that these sites had links to child pornography sites, which he also explored. He admitted to downloading approximately eighty-seven pictures of child pornography from various sites and storing these pictures on the hard drive of his computer. Due to a problem with the sound card in his computer, he took the CPU to the Gateway Computer Store for repair on November 18, 1999. The technician, while completing the work on his computer, discovered the pornographic pictures of children and the authorities were notified.

Mr. Testamark reported that he became "curious" and decided to explore the child pornography sites. He described becoming "desensitized" to the pictures and began downloading more pictures. He admitted to downloading pictures of children ages five through seventeen and that the pictures depicted children alone, children engaging in sexual acts with other children, and children engaging in sexual acts with adults. The sexual acts depicted in these images included oral and vaginal sex. Mr. Testamark denied downloading or viewing pictures involving themes of sado-masochism, bondage, mutilation, or force. He stated he would download the pictures, view them once, and leave them stored on his hard drive. He denied masturbating to the images. He acknowledged that it was illegal to possess pornographic pictures but that "it did not seem to matter if it was right or wrong...something snapped and it felt like the right thing to do." He acknowledged his distorted thinking regarding his decision to download these pictures that included " It is not a crime until you get caught," and that he did not believe he would get caught. When questioned regarding the impact of his behavior on the children depicted in pictures, Mr. Testamark stated that he was "sad" for them and children should never have to "go through what they went through." When asked how the children may feel, Mr. Testamark stated that the children may feel that "they did something wrong, they are dirty, and that it is their fault." He also stated that they might feel "angry" and "scared."

<u>Collateral Information</u>: On November 16, 1999, Kenely Testamark took his Gateway 2000 computer to the Gateway Country computer store located at 3200 North Federal Highway, Fort Lauderdale, Florida to have the sound card repaired. A computer technician, while working on the computer, discovered numerous images of child pornography. The Fort Lauderdale Police Department was contacted and they seized the computer. On January 12, 2000 a forensic investigation of the computer was conducted by Detective R. DeYoung of the Broward Sheriff's Office which identified eighty-six computer file images depicting sexual acts by children stored on the hard drive. The images depicted persons under the age of eighteen involved in sexual intercourse, oral copulation, anal intercourse, masturbation, and exposing their genitals. The case synopsis also indicated that there were images depicting bondage, torture, and genital mutilation

stored on the hard drive of the computer; however, the synopsis does not indicate if these pictures depicted adults or children.

Detective Richard Love and Detective Vince Rizzitello interviewed Mr. Testamark on November 17. 1999. During this interview Mr. Testamark admitted to downloading and storing "trashy cartoons" and other photo images. He also admitted to having child pornography on his computer but denied having a problem or needing help stating, "No, I just like to look at it."

The Encase Report identified that Mr. Testamark had book marked numerous pornographic sites including child and teenage pornographic sites in his Internet service provider software. Further, the report listed an E-mail Mr. Testamark wrote to a website with the subject listed as "child porno pictures." The E-mail contained a discussion of registration for the site and a request for pictures.

Sexual Development: Mr. Testamark reported that he first learned about sex in the seventh grade during a sex education class. He reported his first exposure to sex was at age fourteen at which time he had his first sexual experience with a sixteen-year-old female. He reported that they had been dating for six months and they mutually decided to have vaginal intercourse. He described the experience as positive and remembered wanting to have sex again. Mr. Testamark reported beginning to masturbate at age sixteen at which time he masturbated up to three times per day. He stated that when he joined the army he stopped masturbating because he did not feel comfortable engaging in masturbation in close quarters. He stated that he does not currently masturbate because he is too occupied with his schoolwork. He stated he was first exposed to pornography at age twenty-eight including magazines and videos which he would view approximately every two months. He admitted to masturbating to the pornographic videos and magazines. He denied ever purchasing or renting pornography of children. He admitted to visiting strip clubs on two occasions when he was twenty years old. He reported that he fantasizes about consensual sexual activities with age appropriate females in exotic locations. He denied sexual arousal, sexual thoughts, or fantasies about children. He denied engaging in fantasies or behaviors that include telephone sex lines, voyeurism, exhibitionism, beastiality, homosexual activity, use of prostitutes, or rape. He denied the use of coercion, manipulation, bribery, threats or force to obtain his sexual needs. He denied engaging in sexual activities in public places or that others have ever witnessed him engaging in sexual relations. He denied being the victim of sexual or physical abuse.

Additional Legal History:

Mr. Testamark denied, and available records did not indicate, a previous history of involvement with the legal system, as either an adult or a juvenile.

Substance Use:

Mr. Testamark admitted to the use of alcohol, typically beer, beginning at nineteen. He reported that he would, at times, drink up to a twelve pack in one night but that recently his consumption has significantly decreased. He denied the use of other drugs including marijuana, cocaine, crack, hallucinogens, Exstasy, or inhalants.

Mental Health & Sex Offender Specific Treatment:

Previous Treatment: Mr. Testamark reported having a "slight" drinking problems and that he participated in weekly chemical dependency counseling at the age of twenty-two while in the army. He participated in this treatment for six months. Mr. Testamark denied other previous mental health treatment including outpatient therapy, inpatient treatment, or psychiatric services.

Educational History:

He reported attending Saint Peter and Paul High School, in St. Thomas and a boarding school in the states. He graduated in 1987. He stated that he typically earns Bs and Cs in school. He reported a positive school adjustment, that he was popular, and good relationships with the teachers. He reported being suspended on one occasion for skipping school. He denied ever being expelled or failing a grade. He reported being on the baseball, football, and soccer teams in high school. He described having attended numerous colleges off and on since graduating high school. He would often enroll in a college but drop out after a few semesters due to lack of interest and indecisiveness regarding his major. Mr. Testamark is currently pursuing a bachelor's degree in Criminal Justice at Florida Metropolitan University and is scheduled to graduate within the next month.

Military History:

Mr. Testamark served in the Army from 1989 to 1992 obtaining the rank of Specialist (E-4). He was a Chemical Operations Specialist and participated in Operation Desert Storm. Mr. Testamark denied Posttraumatic Stress Disorder. He admitted to being demoted for insubordination. He reported having a "slight" problem with authority and did not like being told what to do. He reported receiving an honorable discharge.

Employment History:

Mr. Testamark reported a sporadic employment history intermixed with attendance at numerous colleges. He reported holding miscellaneous jobs including: prep cook, Disc Jockey/Bartender (1987-1989), U. S. Army Specialist Clerk - chemical operations equipment (1989–1982), commercial diving instructor and rescue diver (1992-1994), position with the St. Thomas Travel and Tourism (1994-1996), was employed on a cruise ship (March – May 1997) and did temporary work at sporting events. He has been employed at a local movie theater since June 22, 2000.

Family background:

Mr. Testamark was born in St. Thomas, United States Virgin Islands to Evadry Hodge and Franklin Testamark. He reported that he was raised in St. Thomas and recalled a generally happy childhood. He reported that his parents separated when he was five. Mr. Testamark's mother is employed as the Director of the Board of Education. She currently resides in St. Thomas and he last saw her in May 1997. He has regular telephone contact with her. He described that he has a conflictual relationship with his mother and that he is frequently angry with her. Mr. Testamark's father was a restaurant owner in St. Thomas. He died in 1999 due to substance abuse related health

r-06121-WDF   Document 25   Entered on FLSD Docket 10/10/2000   Pa
Testamark, Kenely
Page 6 of 10

problems. He described a positive relationship with his father until age twelve. He reported that his father hit him on one occasion after which they never spoke again. His mother married Douglas Hodge in 1990. Mr. Testamark described a mixed relationship with his stepfather that sometimes they got along well and, at other times, their relationship was conflictual. He described a conflict with his stepfather over a television program and has not since talked to him. Mr. Testamark reported having one brother, Glen (age 28), and one sister, Kurell (age 14) who both reside in St. Thomas. He described "O.K." relationships with his siblings. He reported last seeing his bother in May 1997 and his sister in 1992.

He described his childhood as "happy" and that as a young child he spent the majority of his time with his father. When his parents divorced, his mothers' boyfriend and he did not get along. He reported that his mother sent him away to boarding school beginning at age thirteen. Mr. Testamark denied ever being physically abused or being exposed to domestic violence other than conflicts with his mother's boyfriend and his stepfather. He reported a family history of substance abuse in his father that included marijuana and crack cocaine. He denied a family history of mental illness.

Mr. Testamark reported having one significant relationship with a woman he met while in basic training. He reported they dated for three years and were engaged. The relationship ended due to physical separation and his fiancé's infidelity. Mr. Testamark described sporadic relationships since that time, none of which lasted more that six months. He denied having any children. He reported a limited social life, that he feels generally uncomfortable around people, and spends the majority of his time by himself watching television and on the Internet.

Medical History: Pregnancy, birth, and developmental history information were not available. Mr. Testamark denied experiencing any hospitalizations or chronic illnesses. He denied ever suffering any significant traumas to the head or ever-losing consciousness. He denied a history of seizures. He did report receiving eighty-seven stitches after falling from a second story balcony onto glass bottles. He is not currently taking any medication.

TESTS AND TECHNIQUES USED:

Clinical Interview with Kenely Testamark
Review of Records
Minnesota Multiphasic Personality Inventory – 2 (MMPI-2)
Multiphasic Sex Inventory - II

BEHAVIORAL OBSERVATIONS:

Mr. Testamark was a 31-year, 1-month-old, American male of Caribbean descent interviewed at Comprehensive Forensic and Clinical Services in Plantation Florida. Mr. Testamark was of short stature and stocky build. He appeared his stated age. His hair was black and cut short. He was dressed in clean, casual clothes that were appropriate to the situation. His hygiene and grooming were good. He had no noticeable tattoos or piercings. No abnormalities were noted in ambulation and Mr. Testamark did not exhibit any tics, tremors, or other unusual motoric symptoms. Mr. Testamark initially appeared anxious and guarded. As the interview progressed, he appeared less

anxious, although he remained guarded. He was polite and respectful toward the examiner during the interview process and did not exhibit irritability or anger.

He was oriented to time, person, place, and situation. His speech was of normal tone, rate, and volume. Mr. Testamark's eye contact was limited. His memory, immediate, recent, and remote appeared intact. Attention and concentration were moderately impaired. He appeared to be of average intelligence. Thought processes were logical and coherent, and absent of any delusions or grandiose thinking. His mood was depressed and his affect was blunted. He reported symptoms of depression including hopelessness, occasional suicidal ideation, anhedonia, sleep disturbance, lack of energy. He denied symptoms of mania, psychoses, hallucinations, Posttraumatic Stress Disorder, anxiety, Obsessive-Compulsive Disorder, or eating disorders. He denied a history of enuresis or encopresis. He denied being the victim of physical or sexual abuse. He denied current suicidal ideation although he reported a history of past ideation and plans but denied attempts. He denied a history of self-mutilatory or homicidal ideation or actions. Insight and judgment appeared impaired. The following is judged to be an accurate assessment of Mr. Testamark's current functioning.

PREVIOUS EVALUATIONS:

No previous evaluations were available for review at the time of evaluation.

TEST RESULTS AND INTERPRETATION:

MMPI-2: Mr. Testamark produced a valid and reliable MMPI-2 profile. He responded to the test instrument in an open and candid manner, if somewhat critically, admitting to many psychological problems, anxieties, and unusual behaviors. He reported a significant amount of distress at this time and that he feels unable to handle the situation effectively. He is experiencing a low self-image.

Mr. Testamark produced significant elevations on the clinical scales of the MMPI-2 suggesting marginal social adjustment and feelings of alienation from others. Individuals who respond in a manner similar to Mr. Testamark typically demonstrate depression, anxiety, tension, irritability, and generalized mental distress. They report difficulties with concentration and report difficulty making decisions. He may become agitated and restless at times and may think and act in impulsive manner, making decisions and behaving in erratic ways. Behaviorally, Mr. Testamark is likely to show a lack of interest, motivation, and energy for participating in activities and social engagements. He may report feeling discouraged and hopeless in life and his attempts to accomplish his goals or plans. He will tend to ruminate and brood over these matters and may report feeling useless, powerless, or defeated. He is likely to attempt to cope with these feelings by avoidance or withdrawal including substance abuse, withdrawal into fantasy, or suicide.

Emotionally, individuals who respond in a manner similar to Mr. Testamark tend to be highly variable, but their affect generally revolves around feelings of guilt, inferiority, and hopelessness. Suicide attempts are relatively common. Emotionally distant from others, these persons are peculiar in thought and action (particularly in sexual areas), show subtle communication problems, and are seen as unpredictable. They tend to be suspicious, angry, hypersensitive, blameful, and

evasive. Their poor social judgment, nonconformity, and impulsiveness lead to a high likelihood of acting-out behaviors. Crimes committed by these individuals are often poorly planned and carried out in a manner that seems to ensure that they will get caught, and appears to be self-defeating. Educational and occupational histories are often marked with underachievement and marginal social adjustment.

Others who respond in a manner similar to Mr. Testamark have experienced chaotic family lives characterized by intense home conflicts. Early in life, these individuals learned to view others as untrustworthy, rejecting, hostile or dangerous, and established an enduring attitude of distrust and protective withdrawal from the world. They are easily hurt by criticism and tend to read malevolent meaning into situations and over generalize their thinking. They tend to angrily ruminate about real or imagined injustices done to them and may have delusions or ideas of reference. They virtually always deny their anger and instead attribute the anger to others, often through a transparent use of projection. When they do recognize their anger it is well rationalized and justified. Many of these individuals also learn to protect themselves (and alleviate their painful anticipations of rejection and hurt) by striking out in anger and/or rebellion. Others become social isolates or nomads. Enduring interpersonal relationships are unlikely. These individuals are often single and have problems that revolve around sexual conflicts or difficulties. Although these persons have strong needs for attention and affection, they are distrustful of others. Emotional involvement often invokes fear, and these persons are overly sensitive to the slightest hint of emotional demands or expectancies. Mr. Testamark is likely to describe himself as lonely and unloved, that others misunderstand him, that he gets a "raw deal" out of life, and blame others for his problems

Mr. Testamark appears to be experiencing significant problems with self-esteem. He is likely to be self-deprecating, lack self-confidence, and be easily hurt by criticism.

Establishing a therapeutic alliance with such persons is difficult due to their tendency to be evasive and deny that problems exist. He is likely to be mistrustful of doctors and mental health personnel. He may believe that no one can understand him and that he will be unable to make changes in his life. He is likely to give up easily when he encounters problems. However, he may be receptive to psychotherapy at this time in that he is in a significant amount of emotional pain and appears willing to address his issues at this time.

MSI-II: On the MSI-II, Mr. Testamark responded in a reliable and consistent manner to the test instrument, producing a valid and interpretable profile. His response pattern on the Denial Scale suggests that he is admitting to some level of sexual impropriety but that he does not define the behavior as a sexual offense.

On the Clinical/Behavioral Scales of the MSI-II, Mr. Testamark's response pattern suggests he was experiencing depression and suicidal ideation at the time of the assessment and he acknowledged that he has attempted suicide in the past. His score in the Antisocial Behavior Scale does not suggest a pattern of delinquent or antisocial behavior. He does not appear to have a lifestyle pattern of violent behavior as noted on the Domestic Violence Scale. His response pattern on the MSI-II did not indicate a history of substance abuse as assessed by the Substance Abuse Index.

On the Sexuality Scales of the MSI-II, Mr. Testamark acknowledged being accused of a sex offense against a child involving pornography. He endorsed two items from the Pornography Index suggesting he is addicted to pornography and that he actively searches for pornography. However, he denies interest in or use of pornography involving children or rape themes. Further, his responses on the Child Molest Scale did not indicate his ever having fantasies involving children or rape themes. He denies ever having enticed or sought out a child for sexual activity. The Sexual Assault subscales indicate denial in ever having molested a child. Additionally, in responding to the test instrument, Mr. Testamark appeared to associate deep feelings of loneliness and need for affection with his sexual impulses and desires. Lastly, His response pattern suggested a lack of accurate knowledge about sexual anatomy and physiology.

DIAGNOSTIC IMPRESSIONS:

AXIS I:
1. Major Depressive Disorder, Single Episode, Severe without Psychotic Features, Chronic
2. Rule Out Pedophilia
3. Rule Out Alcohol Abuse

AXIS II: 1. None

AXIS III: 1. None

AXIS IV: 1. estrangement from family, pending legal charges, lack of social support system.

AXIS V: Current – 40
Highest Past Year – 45

SUMMARY:

Mr. Testamark is currently experiencing significant depression which he described as chronic in nature. Although he denied current suicidal ideation in the interview, his responding to psychological test instruments suggests ongoing suicidal ideation that requires continuous monitoring. Mr. Testamark is a socially isolated and guarded individual who appeared to have significant needs for attention and social interaction but lacks the skills necessary to engage others. He is likely to be seen by others as odd and peculiar in thought and action. He suffers from a negative self-perception and appears to lack confidence, which interferes with his ability to form and maintain healthy and ongoing relationships with others. Rather than risk rejection from others, Mr. Testamark retreats into isolation and interactions with the outside world are limited to mainly television and the Internet.

While Mr. Testamark admits to downloading and viewing pictures of child pornography, he denies sexual interest and arousal related to children. However, his decision to actively seek out and retain sexually explicit material involving children suggests the possibility of Pedophilic interests. Further evaluation and treatment is needed to clarify the exact nature of Mr. Testamark's sexual interest pattern. In addition to clarification of sexual interest, Mr. Testamark is likely to benefit

from many of the issues addressed in sex-offender specific treatment including social skills, anger management, sex education, confrontation of his distortions, and development of a relapse prevention plan.

Mr. Testamark appears to be an appropriate candidate for outpatient therapy at this time. Current information suggests his offenses are limited to the viewing and storing of pornographic images obtained over the Internet. Further, Mr. Testamark is suffering from chronic depression and resultant low self-esteem and social isolation that may have contributed to his decision to become involved in the viewing of pornography via the Internet. Mr. Testamark appears to be experiencing significant distress at this time and he is motivated to participate in treatment. Treatment efforts to address his depressive symptomotology and provide him skills to manage the factors contributing to his decision to view child pornography are recommended.

RECOMMENDATIONS:

1) Individual therapy to address issues of depression, poor self-esteem, and poor social skills.

2) Psychiatric evaluation to determine the appropriateness of psychopharmacologic intervention for his depressive symptomotology.

3) Mr. Testamark will likely benefit from sex-offender specific individual and group treatment which will provide him with sex education, social skills training, anger management training, confrontation of cognitive distortions regarding his deviant sexual interests and behavior, empathy training, and assist him in developing a relapse prevention plan. This treatment is available at the following locations:

    Center for Offender Rehabilitation at the Oakbrook Counseling Center
    5950 West Oakland Park Blvd., Suite 107
    Fort Lauderdale, FL 33313
    Contact: John Morin, Ph.D. at (954) 735-6240

    Clinical and Forensic Institute
    4801 S. University Dr., Suite 301E
    Davie, FL 33328
    Contact: John Spencer, Ph.D. at (954) 434-8006

4) A Substance abuse evaluation to determine appropriateness for chemical dependency counseling.

_____
Eric A. Imhof, Psy.D.
Licensed Psychologist (Florida - PY 6061)
Licensed Clinical Psychologist (Virginia - # 0810002517)
Virginia Board of Psychology Certified Sex-Offender
  Treatment Provider (#0812000108)